May it please the Court, my name is Taylor Young, and I represent David Clark in this appeal. The issue in this case really comes down to this. When an insurer is presented with two claims from the same insured, may that insurer, consistent with its obligations of good faith and fair dealing, ignore evidence that the insured is entitled to benefits under one claim based on the technicality that it discovered this evidence in the presentation of a separate claim. We submit it cannot do so. The Arizona Supreme Court in the Zillage case said an insurer violates its duty of good faith and fair dealing when it forces an insured to go through needless adversarial hoops. And what the teaching of that case is, is that it's not simply erecting artificial barriers for this insured to be able to get the benefits. It's elevating form over substance. It's preventing an insured from getting a benefit to which they're entitled based on a technicality. In our briefing, you'll see that we say that there are we identify three breaches that occurred. The first is the initial denial of David Clark's net claim. Why was that a problem, counsel? At that point, he didn't even think that it was. He wasn't even tying it to the November. Well, he's not a doctor, Your Honor. So I think it's a bit of a ---- Well, let me make sure I've got the facts right. Sure. You're talking about the denial that occurred. What's the date of the first denial? Well, the first denial is ---- February? Yeah, in February, after the ---- he submits his claim in February, and then in March there's the denial of the net claim. Okay. So at that point, my understanding is that he had reported and the employer had reported they didn't think it was related to a workplace injury, right? My understanding is that they didn't really get tied back to the November until the first IME, which was June of 2013. Am I wrong? No. In the IME complaint, it ---- No, I'm wrong. No, I'm not. Forgive me. I don't know. I apologize. I ---- What's the first time it was tied back? The first time it was tied back to the thumb injury, because that's what we're talking about, the two claims there, of course. Yes.  That's the question. Okay. The first time it was tied back to thumb injury was the IME complaint, the IME report. Okay. So that's June of 2013. That's June of 2013. And the adjuster had a duty to fish or cut bait within three weeks under Arizona law, as I understand it. And she had denied the claim. So getting back to my question about just that first denial. Sure. What was wrong with that? Why was that a bad faith issue? Because she hadn't ---- she knew that there was an MRI that was happening, right? And the denial in that instance was a denial without any medical evidence. She had the fish or cut bait. Basically, the denial was solely based on the idea that I've got 21 days and I'm going to deny it. There had been no review of the medical records at that time. Well, what can she ---- doesn't she have to ---- doesn't she ---- isn't it a binary choice? I would agree with Your Honor that it's a binary choice. But in this instance, what ---- Well, wait a minute. So since it's a binary ---- I'm not trying to give you a hard time, but it just seems to me this is not your strongest argument. I was ---- As of the time she denied it, if her choice is just yes or no, and at that point nobody had tied it to the thumb injury, then why is this a bad faith issue at all? Well, Your Honor, we think it's a bad faith issue in terms of the ---- of the pattern here is what I would say. But I agree with you it's not our strongest argument. It's the reason why I ---- Let's go to your strongest point. I would love to go to my strongest argument, Your Honor, which is that when the IME report comes in, the adjuster who is the same adjuster for both of these claims are two months apart in terms of the supposed dates of injury. It's the same adjuster, same employer, same employee, injured worker. She receives this IME report, and that IME report says that connects this claim, connects this injury to the thumb incident. Right. That was received June 27th. That was ---- And as of July 24th, she's got this note in her record saying Clark is now alleging he had cervical pain or injury after his November truck accident. And she also acknowledges the claims were consolidated. Correct. So is your strongest argument that between July 24th and March 5th, they don't have a reason to not pay the claim? They didn't have a reason to not pay the claim, and they also did not have a reason to continue to force us to go through the ICA process in order to ultimately get the award that we did. Okay. So here's my next question. On March 5th of 2014, the adjuster notes that she's waiting for the judge's decision. The judge acknowledges that the IME thinks it's connected to the thumb, but then says the judge could still decide this claim is noncompensable and related to the earlier 2012 incident. Your client had a notation earlier about something that happened before November of 2012, before the thumb injury. What is the ---- here's my question. What's the first indication in the record that the insurance adjuster was aware of that earlier injury? Injury earlier than the thumb injury? Yes. I don't know the answer to that, Your Honor. But that would provide a basis to deny the claim, would it not? I don't know that it would provide a ---- it might provide a reason which a jury could decide whether or not it was a sufficient reason. But again, this is a ---- the standard here, and there's a reason why bad faith is usually determined by the jury, is the jury has to look at the facts and decide and make way the credibility determinations and decide whether or not this decision was a decision that was made in good faith. The IME ---- and the district court seemed to be quite influenced by the fact that the IME report was very careful to say I'm only going by his self-report of his history. I know nothing about this person's history. But in a ---- I agree that the district court was influenced by that. But again, that is a ---- that's the type of credibility determination that a jury should make, not a district court. Your strongest argument is that at summary judgment, this was ---- the trigger was pulled too quickly and this should have gone to the jury. Is that it? Absolutely, Your Honor. That's what ---- I mean, I think our ---- I hope our brief makes clear that we think this is a summary judgment case. And, in fact, we spend some time in our brief on district court's weighing evidence, which is not something I would normally try and bring to this Court's attention on a de novo review, but as the ---- there have been numerous cases in the District of Arizona regarding workers' compensation bad-faith cases, and they're kind of all over the map. And so some guidance from this Court reminding the district courts that they, when they're applying this standard, that they are using a summary judgment standard and should not be making credibility determinations and weighing the evidence. What about Dr. Post's testimony in the report of Dr. Felix Irfan? Why wasn't it enough to show the reasonable insurer would have denied the claim? It's a ---- so on the fairly debatable, you know, spectrum, it's true that if a claim is fairly debatable, a ---- an adjuster can defend on that basis. But, again, here, that report isn't definitive enough in terms of the claim. And what we have is a ---- the ---- when the IME ---- again, I want to focus on the second ---- on the second part. When the IME says, we think that this is related, and the insurer turns around and uses as their basis for denial that it's on appeal, so we can't ---- so we can't re-evaluate this claim, we can't open it up, that's a violation of duty of good faith and fair dealing. The insurer is supposed to treat the insured's rights as paramount to its own, and so it can't elevate its own rights over that of the insured. So when you have this evidence that the IME says, and, again, this is their IME who they pay for to give this opinion, who says this thing is related, the insurer can't rely on, well, that's this claim, and I've got another claim, and, by the way, they're both up on appeal. I mean, what the ---- what the ---- we know that the adjuster knew at the time that the IME believed that this was caused by the thumb injury. We know that the adjuster at the time believed that the ---- sorry. We know that the adjuster at the time knew that Clark was making a claim, right, that these had been consolidated, and so that this was being heard together. But what the adjuster said, what the adjuster testified, is that they were not going to open up the ---- could not revisit it because it was up on appeal. And the deposition testimony is very clear. Kagan. Could it revisit the denial of the cervical injury as opposed to the thumb? Well, they were both ---- they were actually both being appealed, but ---- and they had been consolidated together. But that's the denial, is they're saying, the adjuster is saying, essentially, once this case is up on appeal, it doesn't matter what evidence I am presented with. It's up on appeal. I'm entitled to allow that ICA process to run its course. And we don't think that that's actually the standard of good-faith and fair dealing. That's why we cited the Lenar case, because although it's not a workers' compensation, it's a duty-to-defend case. But nonetheless, the Lenar case is illustrative of the duties that you ---- that insurance carriers, oh, you can't just rest and say, well, we've got a coverage dispute, so we're going to wait and not do anything, not evaluate. We're just going to wait until that coverage dispute is resolved. But the district court, in fairness, I'll just tell you, from my reading of the record, it was easy to deny the second injury at that time because there was no IME yet. And nobody had tied it back to the thumb, as we had just discovered. So I'll just tell you, that's my ---- that's just my scorecard. All right? That's how I read the record. And so the reason it seems to me to be important is because the cases were consolidated on appeal, but the district judge said nobody ever asked the adjuster to pay this claim, the cervical injury, tie it to the thumb injury. And it ---- and the district judge's order said that the plaintiff bears some responsibility for the lack of communication. So while I really appreciate this tension in the Arizona law saying that the insurance company has to put its insured's interests first and let them know when they're entitled to benefits, it does seem to me that there are two different files on the adjuster's desk. And is it correct, was the district court correct, that you were relying on the insurance company to put the two together and recognize that the claim was compensable? Or was there ever a request by your client? The ---- once the case is consolidated on appeal, we know that these things are together, so the adjuster has reason to believe that these claims are going to be decided together. What ---- and so ---- Well, when you say things are together, there's consolidated in the court that, by the way, that this is a term that's ---- causes confusion all the time. Consolidated may be we don't want to come to the courthouse twice, so we'd like to hear those two completely distinguishable claims together, and so those are going to travel together, and sometimes people misuse the word consolidate. Sure. I don't ---- I couldn't find anything in this record that tells me what consolidate means. Well, the only thing that you can look at is the ICA award itself, which I'm sure the Court has looked at, which is in the ---- which is in our ER. What put the insurance company on notice that you thought this was all one big soup? Is it the IME report? The IME report definitely puts it on notice. And again, we've got the same adjuster, same employer, same injured employee, and events that are two months apart. And so in this instance, you're looking at a ---- the adjusters are relying on this, what I would say, you know, a technicality. In fact, we actually continue to see it in the briefing here, you know, characterizing the ICA as having denied, you know, substantively denied the net claim, the appeal of the net claim. But when you read the ICA award, I think it's clear that they just said, well, it's essentially moot now, so it doesn't matter. If the ICA can put those things together, the adjuster can certainly put those things together. And a jury could conclude that this is bad faith. I would not be standing here in front of this Court suggesting that that temporal line extends forever. But here, a jury could definitely conclude that when you have these two injuries that are so close together, and an IME ---- their own IME comes back and says, this is related to the thumb injury, that they can't just simply continue to sit on their laurels and not adjust the claim when they have evidence that it's compensable. The July 24th note tells us that the adjuster knew that the claims had been consolidated and that the IME thought the cervical injury was attributable to the thumb, right? Yes. And she admitted that in her deposition. Okay. So your time period, your delay is July 24th, 2013 through about March 5th, 2014. I think we make the dates clear in our brief. Yes, you make them a little longer, but it seems to me that that's the segment that is at issue. But anyway, did you want to save some time? I'm going to try and save some time. Thank you, Your Honor. Good morning, Your Honors. Deanne Ayers, representing Indemnity and Gallagher. If I could just dive right into the issue with the IME and talk about the consolidation of the hearing, that seems to be a point of interest. With regard to the consolidation, there was never an indication by Clark that he wanted to abandon his January 26, 2013 claim and attempt to extend his November claim to include the thumb. In fact, with regard to the neck. Yes. Include the thumb injury to the thumb and the neck also. You argue this extensively in your briefing, and I just kept asking myself, what the heck? Why would he care which way you pay him? He just wants to be paid for his injury. So this was really a hard thing for me to understand why you're making this argument. The way the Arizona statute is set up to pay permanent impairment and to pay income benefits to the worker, it actually was to Clark's benefit and also to his counsel's with regard to the way they were paid if he had two separate injuries. You do make an allusion to the fact that he was pursuing — well, you definitely say that he was pursuing two different claims and that he would have been — it was to his benefit he was going to get more money that way somehow. It doesn't explain how, but that's your position, that if there were two, it would have been a more lucrative claim? It would have been a more lucrative claim because what he was ultimately seeking was a final impairment for both of his claims for the thumb, which was — that was what one of the hearings was, a hearing to determine the permanent impairment to his thumb, because under the Arizona statute, he would get a sum of money for that. If he was found also at some point to have a compensable spinal injury, then arguably he might be entitled to an impairment for the neck claim also. If he had — But why does it matter if it's packaged in two claims or one? Because he gets a whole body rating. So if the claim is actually packaged as one claim, the assessor will figure out a calculation for the thumb, will figure out a calculation for the spine, the cervical spine, and then they will combine those figures under the AMA guidelines to give one whole body impairment rating. A lot of times what happens is people who have multiple body parts injured, they end up with a reduced overall rating than if you were just to add, say, a 4 percent and a 10 percent. There's a way it factors in that the medical professionals do, and it gives one whole person rating. And that's what the insurance company pays. But if you are not factoring in two separate — two separate injuries into one claim, you don't have the reduction for the whole person. So Mr. Clark could have stood to have got one rating for the thumb under a thumb date of injury, which would not have been reduced to a whole person rating by a cervical component, and then he could have come over to his January claim that he was asserting and got an assessment for his cervical spine, which would not have been factored into an overall whole person rating. So I can't say that the record shows the amount of money that it would have been reduced to do the rating for, but there would be a reduction for the rating under the statute if you have different body parts rated in the same one. Plus — Kagan. Here's my — just to be completely clear about this, it's not that I don't trust you. It's just that you're probably giving me more information than I need. Is it — is it going to be contested — I'll ask him the same question when he comes up — is it going to be contested if these very same injuries were packaged in two separate claims, that that would have been more lucrative than if he had applied for them in one? I haven't seen any briefing on this by Clark's counsel, so I don't know what his position might be on question, but I can say in the record there's no question on it. That was argued as — And that's your position? Yes, Your Honor. Okay. So can you then go to this next question, which is what's your — I'm focused on between June 27, which is the date of the IME that said, I think, this mechanism of injury is the thump, right? What's the reason for the delay between June 27, 2013, and March 5, 2014? Well — well, there's multiple, and if I can address that, first and foremost, under the Arizona statutory scheme, you always have the worker have the responsibility to establish the claim and what he's seeking for benefits. It is undisputed in this case that Clark never withdrew his January claim. He always pursued the January claim. He went to a hearing, and he testified, I have a January claim to my neck. His doctor's medical records all stated causation was for this January 2nd claim. So we have a worker who is trying to go with two claims. That's one reason. Second, we had an adjuster who had an index come back, which an index shows up in the claim notes, and it basically reflects other claims that are made by the worker. So we know from the claim notes that as of July, the adjuster was aware that there were prior cervical claims. Okay. So I looked for that, and I couldn't find it. As of July 2013? Yes, Your Honor. Where is that? That is — that was in the summary judgment evidence under E to the summary judgment record, which contains the ICA — I'm sorry, Exhibit B, which contains the claim notes for the January 26, 2013 claim. B, like blueberry? Yes, Your Honor. To the summary judgment motion. Yes, Your Honor. If I look there, and I will, that's going to tell me that as of July 2013, the adjuster was aware that this individual had to make an earlier claim, earlier than the thumb, earlier than November of 2012. Yes. It will show a prior cervical claim. Thank you. In addition to the index, we also have the surgeon's report, which if you, again, look in the record, and that was in the summary judgment evidence also as A subpart B. If you look at the top of that record, you see a — it looks like kind of an old-timey facsimile tracking number. Could you give me the ER site? I do not have that with the material I have. Is it in the excerpt or in the record? Yes, Your Honor, it is. And this is the report of the surgeon. And in the surgeon's report, he specifically states that as early as September — so this puts it before the November thumb injury — that as early as September, Mr. Clark was having increasingly severe cervical pain, including paralysis and numbness going into the hands. That's the part I do know. I'm trying to figure out when Ms. Tressler knew that. When did she discover that? That went into the package of material that went to the IME provider. Well, the IME provider said he was relying entirely upon the — he didn't have that. His report's clear. He doesn't have any prior history. Well, it does not appear that he does. But when you look at the adjuster's file, she indicates that records were gathered, and she says the MRI, the surgeon report. She doesn't call the surgeon by name. She says surgeon report. And then there were some miscellaneous records from Dr. Post. And if you read in her claim notes, she has various entries. Where, counsel? We need those sites, please. This is an important point, at least for me. They're in her claim notes during July and August of 2013. I don't have it up here. I do believe it is in our brief. And certainly I can provide the requested — the requested site to the court. Because, again, what the adjuster was looking at was the IME report where Dr. Beggin said it's likely industrial in nature, but then he also goes on to say he was solely relating this based on the subjective complaints or the subjective history of Clark. But then we also have the adjuster having her file the completed index showing prior claims. And we also have the surgeon's own report saying that this had been going on at least since September, predating the November claim. And — And that only matters if she knew it, if she had — if that was giving her a reason for this delay, and that's why I'm — if you want to get us those sites, that would be great, because we have looked. Yes, Your Honor. I will do that. Thank you. And I would just add on to that, Your Honor, that is only — that's only one prong why the continued denial was appropriate, not just that the surgeon said that there was a September preexisting increasing complaint from a cervical, but also the adjuster had a worker telling her that he was making a claim for the cervical from a specific incident that happened in January. You also had the same worker telling his doctors that he didn't know whether it was work-related. You had the adjuster calling the hospital. Those are all the reasons. Forgive me for interrupting. Those are all the reasons, it seems to me, there's no problem denying that first claim in the — the January claim, right? Yes, Your Honor. And if we're talking about bad faith, there's all kinds of reasons to think there's — it's the delay. Right. After the IME indicated that it was industrial in nature. Right. But not only that, even after June, you still have Clark's own doctors supporting and making an assertion that this is all a second injury. So basically, what the plaintiff is arguing to the Court now, which is not what the plaintiff was — what Clark was arguing at the administrative level, is you should totally disregard all of my treating doctors. Counsel, when you're speaking now of Clark's own doctors, the adjuster had a summary made of his medical records. Are those references in the summary? The references from his own doctors indicating that he had an earlier injury? I do not believe they are, Your Honor. I couldn't find them. Okay. But what we do know is that at the administrative hearing, Clark testified he had the second January injury. We do know that Clark put on testimony from his own medical doctors that he was claiming a January injury. The only denial ever by the carrier was for a January injury for the cervical. And in that regard, the ICA, Industrial Commission, upheld that denial that there was no injury. There was never an attempt by Clark to secure any benefits at all for the cervical spine under the November claim. In fact, this record is devoid of any evidence that Clark ever sought any medical at all for the cervical. We know he submitted on his group health. And in doing so, he bypassed the workers' compensation system of Arizona, which would have entitled the carrier to certain rights and remedies for spinal surgery second opinion. Well, counsel, what's your response? You heard him. His — his argument is we consolidated the claims. So what is your response to that? Well, the claims were not consolidated. And if you look in the record — and again, this isn't the summary judgment evidence. There was a letter that's at summary judgment I from the claimant's attorney below where he was requesting that they be consolidated for hearing purposes. So instead of having a one hearing regarding what the impairment rating would be on the thumb and then come back another day for a hearing on the compensability of a January claim, they just had the hearings together at one time for the sake of convenience. But more importantly, the record and the testimony from Clark is that he never sought to have ICA give him one claim. He never sought to get benefits for a spinal surgery or spinal injury in his November — November claim at the ICA. He was always seeking two distinct dates of loss, two distinct injuries. And the consolidation really was for the convenience of the parties and was accommodated by the — What do you understand to be the — the gist or the principal part of the bad faith claim? What act is being, you know, attacked there? Well, in the — in the summary judgment evidence, the strong argument — not strong argument, but the foremost argument asserted by Clark was the denial of the claim and not — Denial of what claim? The January 26th — The consolidated claim? Well — well, the way that it's pled and the way the summary judgment evidence was, that plaintiff was asserting it was bad faith that the January cervical claim was denied. That was the first prong. Then in the summary judgment briefing, Clark argued that somehow the carrier should have known that he wished or should have overridden his rights that he did not wish to have the spinal condition treated as part of the November claim. To have them consolidated. Right. Right. Well, to basically extend the — So — so the bad faith claim is that, as you understand it, what, that the carrier refused or declined to consolidate those two claims on its own motion, so to speak? Is that — is that the bad faith? So to speak, that's the allegation, because there was never a declination. Basically, what Clark is saying is that the adjuster should have ignored Arizona Statute 23-908 that gives him the right to establish his own claim and what he's going to assert as his injuries, and that the adjuster should have just dropped the second injury after the Bagan IME into the first one. And again, even Bagan's IME report was equivocal because he says it's probably and I'm basing my finding solely on the subjective allegation of Clark when the adjuster still knew that Clark was claiming and asserting a second injury. He did do two IMEs, and he came to the same conclusion both times, right? The purpose of the second IME was to determine whether or not the condition was medically stationary for purposes of giving an impairment rating on the cervical spine. So he did do two IMEs. He did do two — And at the time of the second one, I'm trying to get at what he knew when he did the second one. Did any of it change? He was not asked and did not appear to readdress compensability of the cervical. As to November, he was simply requested to address, is the cervical spine medically stationary such that no further treatment is necessary so that there can be an impairment rating? Did he ever change his opinion all the way through the hearing? Dr. Bagan? No, he did not. So he continued to be of the view that this was industrial in nature? He continued to be of the view that it was industrial and that it was not tied to a January 26th date of loss. He didn't give testimony in the ICA record with regard to affirming the November claim because that wasn't asked of him because, again, at that point in time, Your Honor, the plaintiff was still trying to have two separate claims and was offering his own doctor's evidence to support there were two separate claims. Thank you. Thank you, Your Honors. Very briefly, there was speculation that separating this into two claims would be more beneficial for my client or his workers' compensation lawyers. I wouldn't say his trial lawyers because those were the bad-faith claim. That's speculation, and that is evidence that could come out at trial, and the jury is free to weigh that, but it is not a reason based on some sort of objective standard that you can grant some – that the trial court could have granted summary judgment in this case. Also, the reasons for the delay that have been offered are reasons that a jury could review and determine whether or not those reasons based on the weight of evidence should be more believable than the evidence that we put forward. So, again, in this instance, it's a summary judgment case. The court should send this case back to the district court, reverse summary judgment, and allow us to present this case to a jury. Thank you, Your Honor. Thank you both. We'll submit this case on the record. The next case on the argument is Case No. 16-56265, Romero v. Department Stores, National Bank.
judges: D.W. Nelson, Tashima, Christen